William S. O'Hare (CA SB No. 082562)
Snell & Wilmer LLP
600 Anton Blvd #1400
Costa Mesa, CA 92626
Telephone: 714-427-7000
Facsimile: 714-427-7799
wohare@swlaw.com

Thomas R. Makin (*pro hac vice*)
Eric S. Lucas (*pro hac vice*)
David J. Cooperberg (*pro hac vice*)
ALLEN OVERY SHEARMAN STERLING US LLP
599 Lexington Avenue
New York, NY 10022
Telephone: 212-848-4000
Facsimile: 646-848-7698
thomas.makin@aoshearman.com
eric.lucas@aoshearman.com
david.cooperberg@aoshearman.com

Adi A. Williams (*pro hac vice*)
ALLEN OVERY SHEARMAN STERLING US LLP
401 9th Street, NW #800
Washington DC 20004
Telephone: 202-508-4000
adi.williams@aoshearman.com

Abdul Althebaity (*pro hac vice*)
ALLEN OVERY SHEARMAN STERLING US LLP
300 W. Sixth Street, Suite 2250
Austin, TX 78701
Telephone: 512-647-1900
abdul.althebaity@aoshearman.com

*Attorneys for defendants Nichia Corporation and Nichia America Corporation*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DSS, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NICHIA CORPORATION; and NICHIA AMERICA CORPORATION,<br><br>　　　　Defendants. | Case No. 2:19-cv-08172-JVS-JEM<br>Hon. James V. Selna, Ctrm 10C<br>Mag. Judge John E. McDermott<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing:<br>Date:　September 9, 2024<br>Time:　1:30 p.m.<br>Ctrm:　10C<br><br>Complaint Filed: September 20, 2019<br>Trial Date: November 18, 2025 |

TO PLAINTIFF DSS, INC. AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on September 9, 2024, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 10C before the Honorable James V. Selna of the United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, CA 92701, defendants Nichia Corporation and Nichia America Corporation (collectively, "Nichia" or "Defendants") will, and hereby do, move under 35 U.S.C. § 285, Federal Rule of Civil Procedure 54(d)(2) and the Court's inherent powers for an order directing Plaintiff DSS, Inc. ("DSS") to pay Nichia's attorney fees in the above-captioned action ("this action") in the amount of $79,465 (or such other amount as the Court may determine).

DSS filed suit against Nichia in this Court on September 20, 2019, asserting that Nichia infringed DSS's U.S. Patent No. 6,879,040 ("the '040 Patent"). Nichia moved to dismiss DSS's infringement claims as indefinite for reasons of the impossibility of the asserted claims. DSS avoided dismissal by proposing the existence of a hypothetical device (allegedly covered by the claims) that it would later recant. Nichia then successfully petitioned the Patent Trial and Appeal Board ("PTAB") for an *inter partes* review ("IPR") of the '040 Patent, during which IPR (and subsequent appeal to the Court of Appeals for the Federal Circuit) the claims were construed in a manner confirming Nichia's position that the claims were indefinite for impossibility. After DSS filed a First Amended Complaint ("FAC"), Nichia moved to dismiss the FAC on the ground of indefiniteness (as well as other grounds). DSS's only response was to deny the constructions resulting from the IPR. This court rejected that argument and granted the motion to dismiss.

This motion is made on the grounds that this case became exceptional under 35 U.S.C § 285 (or otherwise sanctionable) after the conclusion of the IPR. Nichia seeks reimbursement, however, only for its fees pertaining to its reply and oral argument on the second motion to dismiss, after Nichia laid out—in its motion—the manner in

which the IPR constructions had made indefiniteness indisputable.

This motion is supported by the attached Memorandum of Points and Authorities; the Proposed Order; the declarations of Thomas R. Makin and William S. O'Hare; all exhibits thereto, all judicially noticeable facts, the pleadings in this action; and any arguments presented at the time of the hearing on this motion.

## LOCAL RULE 7-3 STATEMENT

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on July 19, 2024.

Dated: July 26, 2024

SNELL & WILMER L.L.P
William S. O'Hare

ALLEN OVERY SHEARMAN STERLING US LLP
Thomas R. Makin (*pro hac vice*)
Eric S. Lucas (*pro hac vice*)
David J. Cooperberg (*pro hac vice*)
Adi A. Williams (*pro hac vice*)
Abdul Althebaity (*pro hac vice*)

By: /s/ William S. O'Hare
William S. O'Hare

*Attorneys for Nichia Corporation and Nichia America Corporation*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..........................................................................................7

II. FACTUAL BACKGROUND.........................................................................7

III. LEGAL STANDARD...................................................................................11

    A. Fees under 35 U.S.C. § 285……………………………………….....11

    B. The Court has Inherent Authority to Award Fees……………………..12

    C. Determination of Attorneys' Fees…………………………………….13

IV. ARGUMENT ...............................................................................................13

    A. Nichia is a "Prevailing Party" under 35 U.S.C. § 285……………......14

    B. This is an "Exceptional Case" under 35 U.S.C. § 285……………..… 14

    C. Nichia's Attorneys' Fees Are Reasonable ……………………………17

V. CONCLUSION..............................................................................................18

CERTIFICATE OF COMPLIANCE.......................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
  299 F.3d 1336 (Fed. Cir. 2002) ................................................................. 13

*Central Soya Co., Inc. v. Geo. A. Hormel & Co.*,
  723 F.2d 1573 (Fed. Cir. 1983) ................................................................. 13

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ..................................................................................... 12

*DSS, Inc. v. Nichia Corp. et al*,
  No. 17-cv-08849-JVS, (C.D. Cal. Dec. 7, 2017) ......................................... 7

*Fox v. Vice*,
  563 U.S. 826 (2011) ................................................................................... 13

*Hensly v. Eckerthart*,
  461 U.S. 424 (1983) ................................................................................... 13

*Intex Recreation Corp. v. Team Worldwide Corp.*,
  77 F. Supp. 3d 212 (D.D.C. 2015) ...................................................... 11, 12

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) ................................................................... 18

*Nichia Corp. v. DSS, Inc. fka Document Security Systems, Inc.*,
  No. 2022-1704, 2023 WL 7211097 (Fed. Cir. Nov. 2, 2023) ............... 9, 15

*Nichia Corp. v. Document Security Systems, Inc.*,
  IPR2020-00908, 2021 WL 6335708 (P.T.A.B. Nov. 16, 2021) ............ 9, 15

*Octane Fitness LLC v. ICON Health & Fitness Inc.*,
  573 U.S. 545 (2014) ............................................................................ 11, 12

*Peer v. Lewis*,
  606 F.3d 1306 (11th Cir. 2010) ................................................................. 12

*Rambus Inc. v. Hynix Semiconductor Inc.*,
  569 F. Supp. 2d 946 (N.D. Cal. 2008), *aff'd*, 645 F.3d 1336 (Fed. Cir. 2011) ...... 16

*Raniere v. Microsoft Corp.*,
　887 F.3d 1298 (Fed. Cir. 2018) ............................................................................ 14

*Raylon, LLC v. Complus Data Innovations, Inc.*,
　700 F.3d 1361 (Fed. Cir. 2012) ..................................................................... 12, 16

*In re Solerwitz*,
　848 F.2d 1573 (Fed. Cir. 1988) ............................................................................ 13

*Spitz Techs. Corp. v. Nobel Biocare USA LLC*,
　No. 17-cv-00660-JVS, 2018 WL 6164300 (C.D. Cal. June 7, 2018), *aff'd*,
　773 F. App'x 625 (Fed. Cir. 2019) ................................................................ 12, 16

*Spitz Techs. Corp. v. Nobel Biocare USA LLC*,
　No. 17-cv-00660-JVS, 2018 WL 6016149 (C.D. Cal. Aug. 13, 2018), *aff'd*,
　773 F. App'x 625 (Fed. Cir. 2019) ................................................................ 13, 17

**Statutes, Rules, and Regulations**

35 U.S.C. § 285 ................................................................................................*passim*

Fed. R. of Civ. Proc. Rule 54(d)(2) ..................................................................... 2, 11

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## I.     INTRODUCTION

Nichia Corporation and Nichia America Corporation (collectively, "Nichia" or "Defendants") explained early in the present litigation that the asserted claims contain an impossibility and, therefore, are invalid for indefiniteness. Plaintiff DSS, Inc. ("DSS") escaped an early motion to dismiss on this basis by positing a hypothetical device that allegedly was both possible and covered by the claims. DSS would later recant that hypothetical. Ultimately, Nichia sought an *inter partes* review ("IPR") of the asserted claims, during which the claims were interpreted such that the impossibility of the claims was undeniable. Upon return to this court, Nichia moved again to dismiss.

After the IPR, DSS knew, or should have known, that its lawsuit was baseless—and "exceptional" within the meaning of 35 U.S.C § 285. Certainly, DSS cannot claim otherwise after Nichia set forth the implication of the IPR claim interpretations in its second motion to dismiss. DSS's defense to Nichia's motion entirely ignored the binding IPR constructions in a futile attempt to keep its lawsuit alive. Therefore, Nichia seeks fees for the time its counsel spent working on the portion of the litigation following DSS's Opposition to Nichia's Motion to Dismiss—specifically, the activities related to replying to DSS's Opposition to Nichia's Motion to Dismiss and preparing for and attending hearing on this issue.

## II.    FACTUAL BACKGROUND

On September 20, 2019, DSS filed a complaint against Nichia for infringement of U.S. Patent No. 6,879,040 ("the '040 Patent"). Dkt. No. 1.[1]

---

[1] This was the second complaint filed by DSS against Nichia in two years. *See DSS Inc. v. Nichia Corp. et al*, No. 17-cv-08849-JVS (JEMx), Dkt. No. 1 (C.D. Cal. Oct. Dec. 7, 2017). The previous litigation was dismissed with prejudice by this court on October 13, 2023. *DSS, Inc.*, No. 17-cv-08849-JVS (JEMx), Dkt. No. 140, at 1.

On December 23, 2019, Nichia moved to dismiss DSS's complaint, arguing that, "[b]ecause claim 1 requires that each electrical contact '*conforms* to' a 'recess' in the mounting surface, there can be no claimed 'offsets,' *i.e.*, no space, **between** the electrical contacts and the mounting surface, regardless of how the 'recesses and electrical contacts are sized,'" and that this "impossibility, or internal inconsistency, renders claim 1 invalid as indefinite." Dkt. No. 22 at 1 (emphasis in original); *see also id.*, 8–15. DSS opposed Nichia's motion as premature, arguing that multiple claim terms, including "mounting surface," needed to be construed to resolve it, and that the claims could be met by a hypothetical, flat-bottomed device whose flat electrical contacts would run under, not above, the recesses. *See* Dkt. No. 23 at 4–10. In a March 4, 2020 decision, this Court agreed with DSS that: (i) Nichia's motion was claim-construction-dependent and therefore premature, and, (ii) depending on claim construction, DSS's hypothetical device having electrical contacts that "were simply a flat piece of metal at the bottom of the recess" could be within the scope of the claims. Dkt. No. 32 at 3–4 (quoting Dkt. No. 23 at 4).

Shortly thereafter, however, in its June 5, 2020, claim construction brief, DSS proceeded to walk back its "flat piece of metal" hypothetical, acknowledging that the contacts cannot be flat because the mounting surface "recesses" of the '040 Patent "lie '***below*** the outer end of each [electrical] contact.'" Dkt. No. 43 at 5 (alteration in original; emphasis added). DSS even acknowledged that "[t]he specification teaches that th[e] mounting surface includes the electrical contacts." *Id.* at 3. DSS then asserted that the '040 Patent embodiments, none of which show flat electrical contacts, are within the scope of the claims. *Id.* at 9.

Nichia subsequently petitioned the Patent Trial and Appeal Board ("PTAB") to conduct an IPR of the '040 Patent, based in part on DSS's assertion that the non-planar electrical contact embodiments, including the one depicted in Figure 4A, were covered by the claims. *See* Dkt. No. 81-1 at Exhibit A, 17–18. To avoid the prior art identified in Nichia's IPR, which art closely mirrored Figure 4A, DSS proposed to construe the

1  "mounting surface" as a non-planar surface at the bottom of the device that follows the contours of its recesses, *i.e.*, indentations or clefts that provide room for solder to mount the device. *See* Dkt. No. 72 at 7 (citing Dkt. No. 72-5 at 11; Dkt. No. 72-6 at 8–9, 12). The PTAB ultimately adopted this construction, and further found that the patent disclosed electrical contacts mounted in that surface. *See Nichia Corp. v. Document Security Systems, Inc.*, IPR2020-00908, 2021 WL 6335708, at *3–5 (P.T.A.B. Nov. 16, 2021) ("FWD"). The Court of Appeals for the Federal Circuit ("CAFC") affirmed the PTAB's decision, construing "mounting surface" as the "underside of the device" and as "including the recesses in the mounting surface itself such that a single planar surface cannot satisfy the limitation." *Nichia Corp. v. DSS, Inc. fka Document Security Systems, Inc.*, No. 2022-1704, 2023 WL 7211097, *1–2 (Fed. Cir. Nov. 2, 2023) ("CAFC Dec."). The CAFC also concurred that the patent disclosed electrical contacts mounted in that surface. *See id.*

After DSS prevailed in the IPR by distinguishing the prior art based on its non-planar "mounting surface" construction—a construction that the CAFC hinted lead to questions of validity under Section 112 (Dkt. No. 72 at 11; Dkt. No. 72-8 at 9; Dkt. No. 82 at 6)—DSS returned to this Court and filed a First Amended Complaint ("FAC"). Dkt. No. 68. Nichia then moved to dismiss the FAC, *inter alia*, for indefiniteness due to impossibility, explaining that the PTAB and CAFC had construed the claims in a manner obviating DSS's original arguments against indefiniteness, and in accordance with the constructions advocated by DSS during IPR. Dkt. No. 72. Under these constructions, there can be no offset between the electrical contacts and the mounting surface in which the contacts reside. *Id.* at 15–17. DSS's only response to the motion was yet another about-face. DSS abandoned the now binding IPR "mounting surface" construction for which it had advocated during IPR, and, instead, frivolously, reasserted that the "mounting surface" is planar—contrary to the clear decisions of the PTAB and CAFC. Dkt. No. 81 at 3.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES
CASE NO. 2:19-CV-08172-JVS-JEM

In its decision granting Nichia's motion to dismiss the FAC with prejudice, this Court confirmed that DSS's opposition was baseless:

> The Federal Circuit affirmed that the "mounting surface" is "a mounting surface with recesses in the surface itself." Claim 1 also discloses "a plurality of electric contacts each of which extends from an interior portion of the mounting surface and terminates in one of said recesses." The "electrical contacts" extend from one portion of the "mounting surface," an "interior portion," to another portion of the "mounting surface," the "recesses," which are "in the surface itself." Thus, both the "electric contacts" and the "recesses" are "in" the "mounting surface" based on the plain language of the claim and based on the affirmed construction.
>
> Claim 1 also requires that the "recesses and electrical contacts are sized to provide offsets between said mounting surface and said electrical contacts." As discussed above, however, both the "electrical contacts" and the "recesses" are "<u>in</u> the mounting surface itself." Thus, it is unclear how these components can be "sized to provide offsets <u>between</u> said mounting surface and said electrical contacts." Moreover, if the "electrical contacts" are already "<u>in</u>" the "mounting surface," it is not possible for anything to occupy space "<u>between</u>" the "electrical contacts" and the "mounting surface."

Dkt. No. 88 ("Dismissal Order") at 6 (internal citations omitted; emphasis in original).

Nichia seeks fees for the time its counsel, Allen Overy Shearman Sterling US LLP ("A&O Shearman") and Snell & Wilmer L.L.P ("Snell"), spent working on the

portion of the litigation following DSS's Opposition to Nichia's Motion to Dismiss—specifically, the activities related to replying to DSS's Opposition to Nichia's Motion to Dismiss and preparing for and attending the hearing on this issue. A&O Shearman employed one partner (Thomas R. Makin, 30.4 hours), one counsel (Eric S. Lucas, 21.7 hours), one special attorney (David J. Cooperberg, 1.2 hours), and two associates (Adi A. Williams, 11.1 hours and Abdul Althebaity, 7.0 hours) on these activities. Declaration of Thomas R. Makin ("Makin Decl."), Exhibits 1, 3–7. A&O Shearman legal fees for these activities amount to $58,796. Makin Decl., Exhibit 1. Snell employed one partner (William S. O'Hare, 18.3 hours) and one counsel (Jenny Hua, 0.7 hours). Declaration of William S. O'Hare ("O'Hare Decl."), Exhibits 9–10. Snell's legal fees amount to $20,669. O'Hare Decl., Exhibit 10. Cumulatively, Nichia's legal fees from A&O Shearman and Snell amount to $79,465.

### III. LEGAL STANDARD

#### A. Fees under 35 U.S.C. § 285

Under 35 U.S.C. § 285 and Rule 54(d)(2), Federal Rules of Civil Procedure, this Court can award fees and expenses to prevailing parties in "exceptional" cases. A patent case is exceptional if it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness LLC v. ICON Health & Fitness Inc.*, 573 U.S. 545, 554 (2014). An exceptional case determination is done on a case-by-case basis, considering the totality of the circumstances. *Id*. Among the factors that this Court can consider are "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (citations and internal quotations omitted). "[C]ourts have awarded attorneys' fees under Section 285 where a party advances arguments that are particularly weak and lack support in the record or seek only to re-litigate issues the court has already decided." *Intex Recreation Corp. v. Team*

*Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015). Section 285 was enacted to deter parties from filing clearly unwarranted suits, and aims to compensate the prevailing party for its monetary defense of such lawsuits, recognizing the strain meritless patent litigation has on a party's resources. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1372–73 (Fed. Cir. 2012).

A party's conduct can support an exceptional case finding under 35 U.S.C. § 285 even if the conduct is not independently sanctionable. *Octane Fitness*, 572 U.S. at 555. "A case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* For example, this Court has found that a plaintiff's "persistent disregard of [claim construction] supports a finding that [a] case is exceptional." *Spitz Techs. Corp. v. Nobel Biocare USA LLC*, No. 17-cv-00660-JVS (JCGx), 2018 WL 6164300, at *5 (C.D. Cal. June 7, 2018), *aff'd*, 773 F. App'x 625 (Fed. Cir. 2019). And, it has found that a plaintiff's disregard for the court's construction in order to maintain an inapposite infringement position is objectively baseless. *Id.* at *6. The Supreme Court has explained that "Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one." *Octane Fitness*, 572 U.S. at 557.

### B. The Court has Inherent Authority to Award Fees

This Court also has discretion to award fees under its inherent authority. "[D]istrict courts have broad discretion to determine whether to impose sanctions and the nature or amount of those sanctions." *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010). This inherent power "extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). "'[I]f in the informed discretion of the court, neither the statute[s] nor the Rules are up to the task, the court may safely rely on its inherent power' to sanction bad faith conduct in the course of litigation." *Peer*, 606 F.3d at 1315 (quoting *Chambers*, 501 U.S. at 50).

### C. Determination of Attorneys' Fees

After the Court has determined that a case is exceptional under 35 U.S.C. § 285, a prevailing party is entitled to an award of non-taxable costs. *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577–78 (Fed. Cir. 1983). The calculation of attorneys' fees is guided by the lodestar/multiplier analysis, wherein "courts multiply the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Spitz Techs. Corp. v. Nobel Biocare USA LLC,* No. 17-00660-JVS, 2018 WL 6016149, at *2 (C.D. Cal. Aug. 13, 2018), *aff'd*, 773 F. App'x 625 (Fed. Cir. 2019) (citing *Hensly v. Eckerthart*, 461 U.S. 424, 433–34 (1983)). The party seeking attorneys' fees must submit evidence substantiating and documenting the hours worked and hourly rates charged. *Id.* A court may reduce an attorneys' fee award where the documentation is lacking or where the hours billed were excessive, redundant, otherwise unnecessary, or not reasonably expended. *Id.* Nevertheless, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### IV. ARGUMENT

DSS knew, or should have known, that its lawsuit was baseless after the PTAB's construction of the claim term "mounting surface" and the CAFC's affirmance of that construction—particularly after Nichia set forth its explanation in its second motion to dismiss. DSS's defense to Nichia's motion entirely ignored this binding construction in a futile attempt to keep its lawsuit alive. Counsel, as officers of the Court, cannot recklessly disregard their duty to the Court, or the binding authority, to keep a meritless action alive. *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1356 (Fed. Cir. 2002) ("Counsel must remember that they are not only advocates for their clients; they are also officers of the court."); *see also In re Solerwitz*, 848 F.2d 1573, 1577 (Fed. Cir. 1988) ("[T]he attorney's obligations to the court are ongoing at every stage of the litigation and the attorney must continually reevaluate the positions advanced.").

### A. Nichia is a "Prevailing Party" under 35 U.S.C. § 285

As an initial matter, a dismissal with prejudice confers "prevailing party" status under § 285. *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1303 (Fed. Cir. 2018). The Court granted Nichia's motion to dismiss, dismissing DSS's FAC with prejudice. Dismissal Order at 9. Thus, Nichia is a prevailing party under § 285.

### B. This is an "Exceptional Case" under 35 U.S.C. § 285

The asserted claims in this litigation have always been facially nonsensical. As Nichia explained from the outset of the case:

> [C]laim 1 requires: (1) "electrical contacts . . . each of which conforms to" a "recess" in "a mounting surface" of a "packaged body"; and (2) that "said recesses and electrical contacts [be] sized to provide offsets between said mounting surface and said electrical contacts." Because claim 1 requires that each electrical contact "conforms to" a "recess" in the mounting surface, there can be no "offsets," i.e., no space, between the electrical contacts and the mounting surface, regardless of how the "recesses and electrical contacts are sized."

Dkt. No. 22 at 9. As Nichia further explained, this impossibility resulted from a prosecution mistake in which original claims 1 and 2, which referenced two separate surfaces—a first "mounting surface" and a second planar surface from which contacts were spaced apart—were merged into issued claim 1, which has only one "mounting surface." Dkt. No. 72-4 at 2.

Nevertheless, in response to Nichia's first motion to dismiss, DSS baselessly hypothesized a device having a flat electrical surface whose electrical contacts would run under, not above, the recesses. Dkt. No. 23 at 8. This pie-in-the-sky hypothesis forced the Court to defer deciding the issue of impossibility and indefiniteness, until after claim construction. *See* Dkt. No. 32 at 2–4.

After Nichia's motion was denied without prejudice, DSS moved away from its "flat piece of metal" hypothesis and contended that "the 'recesses' of the '040 Patent lie 'below the outer end of each [electrical] contact.'" Dkt. No. 43 at 5. DSS even acknowledged that "[t]he specification teaches that th[e] mounting surface includes the electrical contacts." *Id.* at 3.

Nichia then petitioned the PTAB for IPR of the asserted claims. Therein, the PTAB adopted DSS's claim construction that "mounting surface" is a non-planar surface that follows the contours of its recesses, and found the contacts to be in the mounting surface. FWD at *3–5. The CAFC affirmed. CAFC Dec. at *1–2 (holding that the "mounting surface" is the non-planar "underside of the device," and "include[es] the recesses," and that "[t]he electrical contacts are mounted in the underside of the device.").

Following the IPR constructions, the asserted claims were irrefutably indefinite for impossibility. As this Court explained:

> [B]oth the "electrical contacts" and the "recesses" are "<u>in</u> the mounting surface itself." Thus, it is unclear how these components can be "sized to provide offsets <u>between</u> said mounting surface and said electrical contacts." Moreover, if the "electrical contacts" are already "<u>in</u>" the "mounting surface," it is not possible for anything to occupy space "<u>between</u>" the "electrical contacts" and the "mounting surface."

Dismissal Order at 6 (emphasis in original).

Yet, DSS unreasonably continued litigating, denying the constructions from the PTAB and CAFC. For example, DSS argued that the claimed "offsets between said ***mounting surface*** and said electrical contacts" could be measured between the contacts and a ***planar surface***:

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR ATTORNEYS' FEES
CASE NO. 2:19-CV-08172-JVS-JEM

> [T]he electrical contacts jog upward and horizontally above the cut away portions of the plastic body that lie atop the PCB. This creates an offset, or space, between the elevated contacts along the side length of the plastic bodies, and the remaining flat underside of the plastic body.
>
> Critically, the claims do not require the offset be between the entirety of the mounting surface and electrical contacts. In other words…, the bare undersides of the elevated contacts are offset from the portions of the plastic body that lie flat on the PCB. That is how the contacts can be part of the packaging device but offset from the planar surface portions of it.

Dkt. No. 81 at 3.

This Court has held that a plaintiff's persistent disregard of a claim construction to which it is bound supports a finding for an exceptional case. *See Spitz*, 2018 WL 6164300, at *5 (A plaintiff's "persistent disregard of [claim construction] supports a finding that [a] case is exceptional."). For example, a plaintiff's "choice to maintain its infringement position after claim construction and to disregard the Court's construction . . . [i]s objectively baseless." *Id.* at *6. Indeed, the CAFC's construction of the claim term "mounting surface," is binding both on DSS and this Court. *Rambus Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 963 (N.D. Cal. 2008) ("[a] district court must apply the Federal Circuit's claim construction"), *aff'd*, 645 F.3d 1336 (Fed. Cir. 2011).

Congress had two objectives in enacting Section 285: (1) to provide a deterrent to frivolous or unnecessary patent litigation, and (2) to compensate parties injured by such litigation. *Raylon*, 700 F.3d at 1372–73. DSS's unnecessary and unreasonable litigation disregarding the CAFC's claim construction, and Nichia subsequent motion to dismiss, is the type of action that this Court finds exceptional, and Congress was

hoping to deter when enacting Section 285.  Thus, Nichia requests that the Court finds this case exceptional and grant its motion for attorneys' fees, limited to the scope of DSS's action that made this case exceptional.

### C.     Nichia's Attorneys' Fees Are Reasonable

Nichia requests $79,465 in attorneys' fees, which is reasonably limited to the time Nichia's counsel, A&O Shearman and Snell, spent working on activities related to replying to DSS's Opposition to Nichia's Motion to Dismiss and preparing for and attending the hearing on this issue, *i.e.*, the exceptional part of this litigation, which began no later than DSS's Opposition to Nichia's Motion to Dismiss.

For these activities, A&O Shearman's team reasonably consisted of one New York-based partner, Thomas R. Makin; one counsel, Eric S. Lucas; one special attorney, David J. Cooperberg; and two associates, Adi A. Williams and Abdul Althebaity.  Makin Decl., Exhibits 1, 3–7.  Further, as reflected in the invoices (Makin Decl., Exhibit 1), A&O Shearman team's hourly rates are reasonable when compared to those attorneys of similar position, experience, and location, as published in the AIPLA 2023 Report of the Economic Survey (Makin Decl., Exhibit 8).  *See Spitz*, 2018 WL 6016149, at *5 ("Courts routinely rely upon the AIPLA survey to determine rates in intellectual property cases.").  Given A&O Shearman's status as a premier global law firm (Makin Decl., Exhibit 2), a reasonable comparison from the AIPLA survey for Mr. Makin's hourly rate is $1025 (Makin Decl., Exhibit 8 [at I-34] at 4 ("NYC CMSA," "third quartile")), which is higher than Mr. Makin's actual billed rate of $965 (Makin Decl., Exhibit 1).  On a similar basis, and given the wide range of experience of the other members of Mr. Makin's team (Makin Decl., Exhibits 4–7), a reasonable comparison range from the AIPLA survey for their hourly rates is $423–$838 (Makin Decl., Exhibit 8 [at I-47] at 5 ("Years of IP Law Attorney Experience," "third quartile")).  This range entirely encompasses their billed rates ($695–$745).  *See* Makin Decl., Exhibit 1.

Additionally, Snell's team reasonably consisted of one Los Angeles-based partner Williams S. O'Hare and counsel Jenny Hua (performing 0.4 hours of research only). O'Hare Decl., Exhibits 9–10. As reflected in the invoices (O'Hare's Decl., Exhibit 10), the Snell team's hourly rates are reasonable when compared to those attorneys of similar position and experience in Orange County and Southern California, and certainly lower than the rates charged by many large regional, national, and international law firms in Southern California and elsewhere. *See* O'Hare's Decl., ¶¶ 6-10, Exhibits 9–10.

Last, as reflected in the individual time entries in the invoices (*see* Makin Decl., Exhibit 1; O'Hare Decl., Exhibit 10), there were no duplicated efforts and the amount of time per task is reasonable. As the Ninth Circuit has explained, while the court has discretion, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

## V.     CONCLUSION

Nichia respectfully requests that the Court grants Nichia's attorneys' fees for Nichia's reply and oral argument on its motion to dismiss, as set forth in the declarations that accompany this motion.

///

///

///

///

///

Respectfully submitted,

Dated: July 26, 2024

SNELL & WILMER L.L.P
William S. O'Hare

ALLEN OVERY SHEARMAN STERLING US LLP
Thomas R. Makin (*pro hac vice*)
Eric S. Lucas (*pro hac vice*)
David J. Cooperberg (*pro hac vice*)
Adi A. Williams (*pro hac vice*)
Abdul Althebaity (*pro hac vice*)


By: */s/ William S. O'Hare*
William S. O'Hare

*Attorneys for Nichia Corporation and Nichia America Corporation*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the Nichia defendants, certifies that this brief contains 3,741 words, which complies with the word limit of L.R. 11-6.1

Dated: July 26, 2024

SNELL & WILMER L.L.P
William S. O'Hare

ALLEN OVERY SHEARMAN STERLING US LLP
Thomas R. Makin (*pro hac vice*)
Eric S. Lucas (*pro hac vice*)

By: */s/ William S. O'Hare*
William S. O'Hare

*Attorneys for Nichia Corporation and Nichia America Corporation*